IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARY T. LEWIS,　　　　　　　　　　)
　　　Plaintiff　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　v.　　　　　　　　　　　　　　　　)　2:17-cv-1531
　　　　　　　　　　　　　　　　　　　)
NANCY A. BERRYHILL,　　　　　　　　)
　　　Defendant.　　　　　　　　　　　)

MEMORANDUM OPINION and ORDER

Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the plaintiff's motion for summary judgment (ECF No. 12) will be granted; the defendant's motion for summary judgment (ECF No. 17) will be denied, and the determination of the defendant will be reversed.

On November 27, 2017, Mary T. Lewis by her counsel, filed a complaint pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§405(g) and 1383(c)(3) for review of the Commissioner's final determination disallowing her claim for a period of disability or for disability insurance benefits and supplemental security income benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423 and 1381 cf.

The plaintiff filed applications for disability and supplemental security income benefits on June 6, 2014 and August 3, 2015 respectively (R.148-149). Benefits were denied on August 25, 2014(R.83-86). On September 9, 2014, the plaintiff requested a hearing (R.87), and pursuant to that request a hearing was conducted on July 13, 2016 (R.37-57). In a decision filed September 8, 2016, an Administrative Law Judge denied benefits (R.20-33). On September 21,

1

2016, the plaintiff requested reconsideration of this determination (R.146), and upon reconsideration, and in a decision dated September 25, 2017, the Appeals Council affirmed the prior decision (R.1-8). The instant complaint was filed on November 27, 2017.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act.

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Comm'r. 529 F.3d 198 (3d Cir.2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999)

Presently before the Court for resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff is not disabled within the meaning of the Act.

At the hearing held on July 13, 2016(R.37-57), the plaintiff appeared with counsel (R.39), and testified that she was 51 years old (R.40); that she worked for the same company for 15 years (R.44); that she frequently had to take off from work due to mental illness (R.45) and that she last worked in June 2011 (R.41,45).

2

The plaintiff also testified that she is unable to leave her home, fears being around people and experiences anxiety (R.42,46,49); that she has suffered from depression since she was a child (R.47); that she spends most of her day in bed (R.44); that she sees her psychiatrist on a regular basis (R.42); that she was off her medication for a six-week period while an attempt was made to switch her medications, but she was not non-compliant (R.43); that she denies having an alcohol problem (R.44) and that with her medications she experiences mood swings several times a week (R.47-48).

At the hearing a vocational expert was called upon to testify (R.53-56). He described the plaintiff's former work as that of a customer service representative which is a skilled sedentary position (R.53). When asked to assume an individual of the plaintiff's age, education and work experience who could perform at all exertional levels but was limited to routine/repetitive tasks in a stable work environment with any interaction with the general public, the witness testified that such an individual could not perform the plaintiff's prior work (R.53-54) but that there were other jobs such an individual could perform (R.54). When asked to also consider if that individual was unable to work with people, and responded that it would be difficult to find an occupation anyone could perform which did not involve interaction with co-workers (R.54-55). When asked whether such an individual would be employable if he/she had to be off work a third of the day, the expert testified that such an individual would not be employable (R.55). The witness concluded that "an individual that's unable to maintain attention, and concentration, their productivity would drop, so it's very similar to like the off-task behavior. It doesn't matter why, but if you're off task for more than 15% of the time, you're going to lose your job." (R.56).

The issue before the Court is whether or not the decision of the Commissioner is supported by substantial evidence.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

It is provided in 42 U.S.C. Section 1382c(a)(3) that:

(A)... an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding

4

sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

* * *

(D) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

It is also provided that:

Notwithstanding the provisions of subparagraphs (A) through (E), an individual shall also be considered to be disabled for purposes of this subchapter if he is permanently and totally disabled as defined under a State plan approved under subchapter XIV or XVI of this chapter as in effect for October 1972 and received aid under such plan (on the basis of disability) for December 1973 (and for at least one month prior to July 1973), so long as he is continuously disabled as so defined.

42 U.S.C. Section 1382c(3)(F).

Pursuant to the authorization contained in 42 U.S.C. Section 1382c(3)(D), the Commissioner has promulgated certain regulations for the implementation of the Supplemental Security Income Program. While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff is not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed by the Commissioner.

Timothy Ostrich, Psy.D. in a report of a record review conducted on August 25, 2014 diagnosed an affective disorder, alcohol/substance addiction disorder and a personality disorder. He concluded that the plaintiff had non-significant to moderate limitations and was not disabled (R.73-81).

The plaintiff's treating psychiatrist reported frequent treatment during the period between February 27, 2013 and February 6, 2015 for recurrent major depression, anxiety and a personality disorder. Alcohol abuse was noted. Frequent medication changes were prescribed. The doctor concluded that if employed, the plaintiff would be off-task about 50% of the time. Additionally, he observed that she had difficulty leaving her home, and would have an extreme limitation in accepting instruction and in adapting to a work situation. (R.226-257, 260-262, 263-289). On at least seven occasions between March 2014 and January 22, 2014, the doctor reported that due to her co-existing personality disorder traits she is very treatment resistant and requires close monitoring (R.227, 231, 232, 234, 236, 241, 243). It is also noted that the plaintiff is not compatible with other people and is not involved in performing any chores (R.229, 240). Finally, on May 5, 2016, the plaintiff's treating psychiatrist noted marked limitations in the ability to understand and remember detailed instructions; carry out detailed instructions; sustain an ordinary routine without special supervision; interact appropriately with the general public; get along with coworkers; respond to changes in the work setting and tolerate a normal level of stress. He also noted that the plaintiff had extreme limitations in maintaining attention and concentration for extended periods of time; performing activities within a schedule; maintaining regular attendance and be punctual; working in coordination with or proximity to others; completing a normal workday or workweek; accepting instruction and travelling to unfamiliar places or using public transportation. The condition was expected to last at least for 12 consecutive months.  (R.261-262).

The plaintiff was hospitalized at UPMC Shadyside from August 5, 2015 through August 6, 2015 for chest pain. A cardiac workup was completed and a final diagnosis of chest pain, B12

deficiency, dyslipidemia, low back pain and fibroids was made. She was discharged to her home (R.290-450).

The relevant regulations require explicit findings concerning the various vocational factors which the Act requires to be considered in making findings of disability in some cases. These regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he/she meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he/she can do his/her past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he/she can exert in engaging in work activity), and if his/her impairment enables him/her to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

Based on the evidence presented, the Commissioner concluded:

> The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> The claimant has not engaged in substantial gainful activity since May 21, 2014, the alleged onset date.
>
> The claimant has the following severe impairments: major depressive disorder, personality disorder and substance disorder.
>
> ***
>
> I note that Section 105 of Public Law 104-121 enacted on March 29, 1996, provides that individuals for whom drug addiction and/or alcoholism is a contributing factor material to the determination that they are disabled are not eligible for or entitled to disability benefits…
>
> The claimant's mental impairment does not meet or medically equal the criteria of listings 12.04, 12.08 and 12.09. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B' criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less that extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 week.
>
> I have considered the four broad functional areas set out in the disability regulations for evaluating mental disorders…
>
> The first functional area is activities of daily living. In this area, the claimant has mild limitations. The claimant reported that she does household chores… and care for her personal grooming and hygiene.
>
> The next functional area is social functioning. In this area, the claimant has a moderate limitation. The record shows that the claimant retains the capacity to interact appropriately and communicate effectively with others. The claimant is apparently able to function in an appropriate manner in the public domain…
>
> The third functional area is concentration, persistence or pace. In this area, the claimant has a moderate limitation. The record shows that the claimant's concentration skills allow for the completion of assigned tasks…

The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration. The record shows no psychiatric hospitalization or emergency treatment for any alleged symptoms.

Because the claimant's mental impairments do not cause at least two "marked" limitations or no "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B' criteria are not satisfied…

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: limited to routine and repetitive tasks performed in a stable work environment where the work place and work process generally remains the same from day to day; no interaction with the general public; would only take instruction and redirection from a supervisor where no immediate response is required of the worker unless clarification is necessary; work with things not people, no work as part of a team and no interaction with coworkers- meaning can see co-workers but do not have to interact with them…

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause at least some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…

[T]reatment records from Prabir Mullick, M.D., for the period from February 2013 to April 2016 show that the claimant was seen for her depressive and anxiety symptoms along with medication management. In February 2013, she was noted to be drinking occasionally, had no desire to stop because she stated she was in control and had no cravings. She did report that her medication was helpful with her depressive symptoms. Mental status examination was essentially normal with no suicidal or homicidal ideation and intact thought processes. Diagnoses included major depression disorder with a global assessment of function … of 50. Subsequent treatment records in 2013 and 2014 show the claimant continued with conservative treatment. Her symptoms were noted to fluctuate at times; however, they were generally in the moderate range and she was noted to be stable. Treatment records in 2015 and 2016 show the claimant was not taking her medication as prescribed with medication compliance noted as sporadic and she had not taken her medication in 6 months. However, by April 2016, when taking her medication as prescribed, her symptoms were noted to improve with more energy and she was able to grocery shop by herself.

> Considering the totality of the foregoing documentary evidence and related testimony, it fully appears that, in the instant case, objective signs and clinical findings indicate a higher level of functioning than that alleged by the claimant at the hearing…
>
> The claimant's treating physician, Dr. Mullick submitted a check form dated May 5, 2016 indicating that the claimant would be moderately to extremely limited in several areas of mental functioning and [I] give them little weight…
>
> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform… (R.25-32).

The record demonstrates that while the plaintiff does not have any significant physical impairment, she has a long-standing history of mental disorders. The reports from her treating psychiatrist medically support his findings that she has a number of marked to extreme limitations which inhibit her ability to be gainfully employed. The only evidence to the contrary comes from a non-treating psychologist who opined that she had only non-significant to moderate limitations and was not disabled. The evidence submitted by and the conclusions drawn by a claimant's treating physician must be given controlling weight when based upon evidence of record. 20 C.F.R. 404.1527(c)(2) ("we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique prospective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations…"). However, a treating physician's opinion is only provided controlling weight when his or her opinion is well supported by medically acceptable sources and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2). "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great

weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000) (internal citation omitted).

In the present case, the only evidence from a treating physician is that received from Dr. Mullick who treated the plaintiff over a considerable period of time and whose findings that she suffers from numerous marked and extreme limitations are well supported. Thus, there is no basis upon which to reject his conclusions. For this reason, the Commissioner's conclusion is not based upon substantial evidence.

Summary judgment is appropriate where there are no material issues of fact in dispute and the movant is entitled to judgment as a matter of law. McMunn v. Babcock and Wilcox 869 F.3d 240 (3d Cir. 2017). In the instant case, there are no material factual issues in dispute, the decision of the Commissioner is not supported by substantial evidence, and judgment should be entered for the plaintiff and against the defendant. For this reason, the plaintiff's motion for summary judgment will be granted, the defendant's motion for summary judgment will be denied, and the decision of the Commissioner will be reversed

An appropriate Order will be entered.

ORDER

AND NOW, this 7th day of June, 2018, for the reasons set forth in the foregoing Memorandum, IT IS ORDERED that the plaintiff's motion for summary judgment (ECF No.13) is granted; the defendant's motion for summary judgment (ECF No.17) is denied and the determination of the Commissioner is reversed.

                                                s/ Robert C. Mitchell
                                                United States Magistrate Judge